UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**VENET DESIR,**

      **Petitioner,**

**v.**                                  **Case No. 8:19-cv-414-MSS-AEP**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## O R D E R

Desir petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for attempted murder with a firearm and aggravated battery for which he is serving 25 years in prison. (Doc. 1 at 1) After reviewing the petition (Doc. 1), the response (Doc. 10), and the appendix (Doc. 11), the Court **DENIES** the petition.

## PROCEDURAL HISTORY

A jury found Desir guilty of attempted second degree murder with a firearm and aggravated battery with a firearm (Doc. 11-2 at 66), and the trial court sentenced Desir to a mandatory 25 years in prison because the jury found that Desir possessed and discharged the firearm and caused great bodily harm. (Doc. 11-2 at 74–75) Desir appealed (Doc. 11-2 at 80), and the state appellate court affirmed. (Doc. 11-3 at 290)

The state post-conviction court denied relief after an evidentiary hearing (Docs. 11-5 at 59–63 and 11-6 at 2–22), and the state appellate court affirmed. (Doc. 11-7 at 82) Desir's federal petition follows.

## FACTS

Johnny Walker fathered two children with April Walker during their eight-year relationship. Desir befriended April Walker, and Johnny Walker did not approve. Johnny Walker found Desir's photograph in April Walker's mobile telephone. Two weeks later, Johnny Walker discovered Desir visiting April Walker at her home while April Walker was wearing a towel just after getting out of the shower. Johnny Walker confronted April Walker about her relationship with Desir, and Desir intervened. Johnny Walker, who was a large man, punched Desir and knocked him down. April Walker's cousin, Corries Facion, broke up the fight and a few days later heard Desir say angrily that he was going to "get" Johnny Walker. A week later, Johnny Walker saw Desir with April Walker in her car, and the two men exchanged angry words.

A week after the angry exchange, Johnny Walker suffered a gunshot wound to his upper thigh while he sat in his car in front of his home. Johnny Walker could see the face of the shooter, who stood right next to the driver's side door of his car and identified Desir as the shooter. Johnny Walker climbed into the back seat, exited through a rear passenger door, crawled to a driveway, and passed out from blood loss before he could call 911. Before he passed out, Johnny Walker saw Desir flee the scene in April Walker's car. A few days after the shooting, Johnny Walker identified Desir as the shooter in a photographic lineup prepared by police. Also, Johnny Walker identified Desir as the shooter in court. The gunshot wound permanently disabled Johnny Walker.

At trial, the defense argued misidentification and contended that Johnny Walker accused Desir of committing the crime because he disapproved of Desir's relationship with April Walker. On cross-examination, a detective testified that a witness observed a male flee

the scene after the shooting, the detective showed the witness a photographic line containing Desir's photograph, and the witness identified a different person as the male who fled the scene. The witness was not certain and identified an individual who only potentially looked like the male who fled the scene.

## STANDARDS OF REVIEW

### AEDPA

Because Desir filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's]

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Desir asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's

4

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 691. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

The state appellate court affirmed in a decision without a written opinion the order denying Desir post-conviction relief. (Doc. 11-7 at 82) A federal court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning."

*Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The post-conviction court provided reasons for denying Desir's claims in two written orders. (Docs. 11-5 at 59–63 and 11-6 at 2–22)

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court instead denies the claim as procedurally barred. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Also, the failure to comply with a state procedural rule governing the proper presentation of a claim generally bars review of that claim on federal habeas. *Coleman*, 501 U.S. at 729. "[A] state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling rests on an independent and adequate state ground if (1) the last state court rendering a judgment in the case clearly and expressly relies on a

state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair" manner. *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494, 1516–17 (11th Cir. 1990)).

To excuse a procedural default on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## ANALYSIS

**Ground One**

Desir asserts that trial counsel was ineffective for not objecting to Desir's absence from a bench conference during *voir dire* when the parties moved to strike potential jurors for cause. (Doc. 1 at 4–5) The Respondent asserts that the claim is unexhausted because Desir failed to present the federal nature of his claim to the state court. (Doc. 10 at 16) Desir raised the claim on direct appeal and cited both *Strickland v. Washington*, 466 U.S. 668 (1984) and the Sixth Amendment. (Doc. 11-3 at 281) Because the state appellate court may review on direct appeal an ineffective assistance of counsel claim apparent on the face of the record and Desir fairly presented the federal nature of the claim, Desir adequately exhausted the claim. *Boerckel*, 526 U.S. at 845; *Picard*, 404 U.S. at 278. *Blanco v. Wainwright*, 507 So. 2d 1377, 1384 (Fla. 1987). The state appellate court affirmed without a written opinion, and the summary affirmance is an adjudication on the merits owed deference under 28 U.S.C. § 2254(d). *Richter*, 562 U.S. at 98.

At the very beginning of *voir dire*, the trial judge asked the potential jurors about their availability to attend the two-day trial. (Doc. 11-2 at 103–04) Desir was present during this initial questioning. (Doc. 11-2 at 115) Juror 11 told the trial judge that she could not attend the trial because she did not have transportation to the courthouse and no one at work could cover her absence. (Doc. 11-2 at 106–07) Juror 34 told the trial judge that she could not attend the trial because she was traveling out of the county for work and no one at work could travel for her. (Doc. 11-2 at 107–08) Juror 40 told the trial judge that he could not attend the trial because he planned to travel to New York to give a presentation. (Doc. 11-2 at 108–09)

The trial judge asked the prosecutor and trial counsel to approach for a bench conference outside the presence of both the potential jurors and Desir. (Doc. 11-2 at 110) Both the prosecutor and trial counsel agreed with the dismissal of the three jurors for cause, and the trial judge dismissed the three jurors. (Doc. 11-2 at 110–11, 218) § 40.013(6), Fla. Stat. ("A person may be excused from jury service upon a showing of hardship, extreme inconvenience, or public necessity.").

*Coney v. State*, 653 So. 2d 1009, 1012–13 (Fla. 1995), held that Rule 3.180(a), Florida Rules of Criminal Procedure, required the defendant's presence at a bench conference during a *voir dire*. A defendant could forfeit his right under the rule only with a knowing, intelligent, and voluntary waiver. *Coney*, 653 So. 2d at 1013. The state supreme court adopted an amendment to Rule 3.180 which superseded the holding in *Coney*. *Amends. to Fla. R. Crim. P.*, 685 So. 2d 1253, 1254 n.2 (Fla. 1996). The amendment, effective before Desir's trial, does not require a defendant's presence at a bench conference during *voir dire*. Fla. R. Crim. P. 3.180(b) ("Except as permitted by rule 3.130 relating to first appearance

hearings, a defendant is present for purposes of this rule if the defendant is physically in attendance for the courtroom proceeding and has a meaningful opportunity to be heard through counsel on the issues being discussed."). *Wike v. State*, 813 So. 2d 12, 21 (Fla. 2002) ("Although *Coney* has since been superseded by statute, it still applies to cases in which jury selection took place after April 27, 1995, and before January 1, 1997.") (citation omitted).

*Coney* was "based on [the state supreme court's] interpretation of the procedural rule rather than an absolute constitutional right to be present at the bench conference when peremptory challenges are exercised." *Muhammad v. State*, 782 So. 2d 343, 353 (Fla. 2001). Under federal constitutional law, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). "The right to be present at every stage of trial does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed." *United States v. Vasquez*, 732 F.2d 846, 848 (11th Cir. 1984).

Desir did not have an absolute right to attend the sidebar conference. Fla. R. Crim. P. 3.180(b). *United States v. Howell*, 514 F.2d 710, 714 (5th Cir. 1975) (holding that the defendants' absence from an *in camera* conference between the trial judge and a juror who claimed that someone had indirectly offered him a bribe for a not-guilty verdict did not violate the defendant's right to be present at a critical stage of the trial). Even if the trial court had allowed Desir to attend the bench conference and Desir had objected to the dismissal of the three jurors for cause, the trial judge could have exercised its discretion and dismissed the three jurors for hardship despite that objection. *Patrick v. State*, 104 So. 3d

1046, 1055–56 (Fla. 2012) ("Section 40.013, Florida Statutes (2008), provides that a person may be excused from jury service upon a showing of hardship, extreme inconvenience, or public necessity. Before a jury is sworn, it is within the sound discretion of a trial judge to excuse a juror for any reason personal to the juror that the judge deems sufficient.") (citation omitted). Consequently, trial counsel was not ineffective. *Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief.").

After the bench conference, the trial judge exercised her discretion and excused the three potential jurors in open court in the presence of Desir. (Doc. 11-2 at 111) Desir was present and could confer with trial counsel during each remaining stage of jury selection, including when the trial judge, the prosecutor, and trial counsel asked the potential jurors substantive questions about their ability to decide the case fairly and impartially (Doc. 11-2 at 124–217), and when the prosecutor and trial counsel exercised additional cause and peremptory challenges. (Doc. 11-2 at 218–23) Because Desir failed to explain how the outcome of trial would have changed if trial counsel had secured his presence at the bench conference, the state court did not unreasonably deny the claim. *Strickland*, 466 U.S. at 694; *United States v. Gagnon*, 470 U.S. 522, 526 (1985) ("The encounter between the judge, the juror, and Gagnon's lawyer was a short interlude in a complex trial; the conference was not the sort of event which every defendant had a right personally to attend under the Fifth Amendment. Respondents could have done nothing had they been at the conference, nor would they have gained anything by attending.").

Ground One is **DENIED**.

**Ground Two**

Desir asserts that trial counsel was ineffective for not moving to dismiss the information because the prosecutor failed to properly sign the information. (Doc. 1 at 6) The post-conviction court denied the claim as follows (Doc. 11-4 at 86–87) (state court record citations omitted):

> [T]he Defendant alleges counsel was ineffective for failing to object or move to dismiss the legally insufficient information. The Defendant argues the information was legally insufficient because it was not signed by State Attorney Mark A. Ober. The Defendant further argues that the information failed to charge the Defendant with the commission of any crime.
>
> Rule 3.140(g) of the Florida Rules of Criminal Procedure provides that an information charging the commission of a felony shall be signed by the state attorney or designated assistant state attorney. However, no objection to an information on the ground that it is not signed or verified as provided in rule 3.140(g) will be entertained after the Defendant pleads to the merits. Fla. R. Crim. P. 3.140(g). This rule exists because this type of defect can be readily cured if the issue is timely raised in the trial court. *Byrd v. State,* 730 So. 2d 382, 383 (Fla. 3d DCA 1999). Additionally, rule 3.140(o) of the Florida Rules of Criminal Procedure provides that[:]
>
>> No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.
>
> The Defendant does not allege any circumstances which would have prevented the State from simply refiling an amended information had counsel timely moved to dismiss the information on this ground. Further, after reviewing the record,

> the Court finds the information was not so vague, indistinct or indefinite as to mislead or embarrass the Defendant in the preparation of a defense or expose him to the substantial danger of new prosecution after conviction or acquittal. After considering the Defendant's allegations and the record, the Court finds the Defendant cannot demonstrate he was prejudiced by counsel's failure to move to dismiss the information on the ground that it was signed by an assistant state attorney, rather than the state attorney. As such, [the claim] is denied.

Whether the trial court would have dismissed the information because the elected state attorney failed to sign the information is an issue of state law, and a state court's determination of state law receives deference in federal court. *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985).

Under state law, "[n]o objection to an information on the ground that it was not signed or verified . . . shall be entertained after the defendant pleads to the merits." Fla. R. Crim. P. 3.140(g). A defendant must object to any technical defect in the information before he pleads not guilty at an arraignment. *Holt v. State*, 516 So. 2d 25, 25 (Fla. 3d DCA 1987). *Colson v. State*, 717 So. 2d 554, 555 (Fla. 4th DCA 1998) ("The validity of an information not signed by the state attorney may only be attacked upon a timely objection."). Even if trial counsel had timely moved to dismiss the information, Desir offers no basis to conclude that the prosecutor would not have filed a properly signed amended information. Fla. R. Crim. P. 3.140(j) ("An information on which the defendant is to be tried that charges an offense may be amended on the motion of the prosecuting attorney or defendant at any time prior to trial because of formal defects."). *State v. Tamvakis*, 459 So. 2d 371, 372 (Fla. 5th DCA 1984) ("Although the issue raised by the defense motions may be pettifogging, the informations were technically defective. It would have been a simple matter for the state attorney's office to correct the errors in their form and be done with it.").

Also, the amended information charged Desir with attempted murder and aggravated battery, listed the statutes for each crime, identified the date when the crimes occurred, identified the victim of both crimes, and alleged the essential elements of each crime. (Doc. 11-4 at 91–92) Desir failed to show that the amended information was so fundamentally defective that the information could not support his judgment of conviction. *Wilson v. State*, 278 So. 3d 725, 727 (Fla. 3d DCA 2019) ("Where a defendant waits until after the State rests its case to challenge the propriety of an indictment, the defendant is required to show not that the indictment is technically defective but that it is so fundamentally defective that it cannot support a judgment of conviction.") (citation omitted). *McMillan v. State*, 832 So. 2d 946, 948 (Fla. 5th DCA 2002) ("[W]here an information totally omits an essential element of the crime or is so vague, indistinct or indefinite that he is misled or exposed to double jeopardy, it is fundamentally defective.").

Because Desir cannot not demonstrate a reasonable probability that the outcome at trial would have changed if trial counsel had moved to dismiss the information, the state court did not unreasonably apply *Strickland. Strickland*, 466 U.S. at 694.

Ground Two is **DENIED**.

**Ground Three**

Desir asserts that the trial court lacked jurisdiction to enter the judgment of conviction and sentence because the prosecutor who signed the information was not a designated assistant state attorney and only the elected state attorney held the authority to sign the information to invoke the jurisdiction of the trial court. (Doc. 1 at 7)[1] The

---

[1] The Respondent asserts that the claim is procedurally barred because an independent and adequate state law ground supports the denial of the claim. (Doc. 10 at 14–16) The post-conviction court denied the claim on the merits (Doc. 11-4 at 87–88), Desir appealed (Doc.

post-conviction court denied the claim as follows (Doc. 11-4 at 87–88) (state court record

citations omitted):

> [T]he Defendant alleges the Court lacked subject matter
> jurisdiction to enter the judgment or impose the sentences in
> this case because the information was legally insufficient.
> Specifically, the Defendant argues the information was not
> signed by the state attorney, and the assistant state attorney who
> signed the information was not properly designated in the
> record or in the body of the information. However, because a
> claim that an information is not signed or verified is waived if
> not raised before the defendant enters a plea to the merits of the
> charge, the Court finds that any unauthorized signature would
> not affect the Court's subject matter jurisdiction. *See* Fla. R.
> Crim. P. 3.140(g); *Carbajal v. State*, 75 So. 3d 258, 263 (Fla.
> 2011) (finding it illogical to conclude that an unauthorized
> signature on an information strips the circuit court of subject
> matter jurisdiction when a complete lack of signature may be
> waived by the defendant). Therefore, [the claim] is denied.

Whether the state court lacked subject matter jurisdiction is an issue of state law, and

a state court's determination of state law receives deference in federal court. *Estelle v.*

*McGuire*, 502 U.S. 62, 67 (1991).

The information charged Desir with attempted second-degree murder and

aggravated battery, two felonies. (Doc. 11-4 at 91–95) The state circuit court had "exclusive

original jurisdiction" over "all felonies and of all misdemeanors arising out of the same

circumstances as a felony which is also charged." § 26.012(2)(d), Fla. Stat. The information

was signed by an assistant state attorney (Doc. 11-2 at 16), and the elected state attorney

may "specifically designat[e]" an assistant state attorney to sign an information. § 27.181(1),

Fla. Stat.; Fla. R. Crim. P. 3.140(g).

---

11-7 at 18–20), and the state appellate court affirmed. (Doc. 11-7 at 82) The state court did
not clearly and expressly rely on an independent and adequate state law ground to deny the
claim, and consequently, the claim is not procedurally barred. *Coleman*, 501 U.S. at 735.

"[W]hile an information or indictment is 'an essential requisite of jurisdiction which cannot be waived,' defects in the charging instrument do not necessarily render void a conviction based on the defective information." *Carbajal v. State*, 75 So. 3d 258, 263 (Fla. 2011) (citations omitted). *Carbajal*, 75 So. 3d at 263, concluded that "[i]t would make no sense to conclude that an unauthorized signature on an information strips the circuit court of subject matter jurisdiction and renders a conviction based on the information void, when a complete lack of signature may be waived by the defendant." *Accord Colson v. State*, 717 So. 2d 554, 555 (Fla. 4th DCA 1998) (holding that a prosecutor's refusal to sign an information did not deprive the trial court of subject matter jurisdiction because "there was an information describing a felony which conferred subject matter jurisdiction on the circuit court").

Because the information charged Desir with two felonies and conferred jurisdiction on the trial court and the state court's determination of state law concerning its own subject matter jurisdiction receives deference in federal court, the state court did not unreasonably deny the claim.

Ground Three is **DENIED**.

**Ground Four**

Desir asserts that the jury's verdict was contrary to the weight of the evidence. (Doc. 1 at 9) Desir contends that the victim failed to identify Desir as the shooter when police first approached the victim, and "there was no realistic possibility for the alleged victim, at the time of the incident[,] to identify the Petitioner or anyone else as the shooter." (Doc. 1 at 9) The post-conviction court denied this claim as follows (Doc. 11-4 at 88) (state court record citations omitted):

> [T]he Defendant alleges the jury's verdict was contrary to the law and the weight of the evidence. The Defendant argues there was insufficient evidence linking the Defendant to the crimes in this case, and the Court applied the incorrect standard when ruling on his motion for judgment of acquittal and motion for new trial. However, rule 3.850 "does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence." Fla. R. Crim. P. 3.850(c). The Court finds this claim should have been raised on direct appeal. Therefore, the Defendant is not entitled to relief on [this claim].

The Respondent asserts that the claim is procedurally barred because the post-conviction court denied the claim on an independent and adequate state procedural ground. (Doc. 10 at 19) Because the Florida procedural rule requiring a defendant to raise a claim of trial error on direct appeal is firmly established and regularly followed, the claim on federal habeas is procedurally defaulted. Fla. R. Crim. P. 3.850(c). *LeCroy v. Sec'y, Fla. Dep't Corrs.*, 421 F.3d 1237, 1260 (11th Cir. 2005). Because Desir demonstrates neither (1) cause for the default and actual prejudice from the alleged violation of federal law nor (2) a miscarriage of justice, the claim is procedurally barred from federal review. *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37.[2]

Ground Four is **DENIED**.

---

[2] In his motion for new trial, Desir asserted that the jury's verdict was contrary to the weight of the evidence. (Doc. 11-3 at 253) However, Desir did not raise the claim on direct appeal (Doc. 11-3 at 274–84) and therefore failed to exhaust the claim. *Boerckel*, 526 U.S. at 845. If Desir returned to state court to exhaust the claim, the post-conviction court would deny the claim as procedurally barred. Consequently, the claim is procedurally barred from federal review. *Snowden*, 135 F.3d at 736. *See also Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . . .").

**Ground Five**

Desir asserts that trial counsel was ineffective for not objecting to a juror who slept during the presentation of evidence at trial. (Doc. 1 at 10) The post-conviction court denied the claim as follows (Doc. 11-6 at 4–9) (state court record citations omitted):

. . . Defendant alleges counsel was ineffective for failing to object and bring to the Court's attention the fact that one of the jurors was sleeping throughout the entire trial. Defendant argues that as a result of this juror sleeping during trial, the jury was unable to properly render a unanimous verdict in this case.

In its January 31, 2017, Order, the Court found that Defendant had alleged a facially sufficient claim and that it was not conclusively refuted from the record. As such, the Court ordered the Office of the State Attorney to respond to Defendant's claim. In its response, the State conceded the need for an evidentiary hearing on [the claim]. An evidentiary hearing was held on August 10, 2017, and September 18, 2017.

At the August 10, 2017, evidentiary hearing, Defendant testified that Public Defender Marcia Perlin was assigned to represent him. Defendant testified that the trial lasted one day. Defendant testified that during trial, one of the jurors fell asleep. Defendant testified that he noticed the juror sleeping when a piece of evidence was being shown. Defendant recalled that Judge Fernandez advised the juror to stay awake. Defendant claimed that Ms. Perlin was aware of this juror sleeping because of the judge's comment during the trial. Defendant admitted that he did not see the juror fall asleep again after the judge's admonition. Defendant testified that Ms. Perlin did not raise any objection to the sleeping juror remaining on the jury. Defendant claimed that he told Ms. Perlin that because the juror was sleeping, there should be a mistrial. Defendant testified that Ms. Perlin did not move for mistrial; "[s]he didn't say anything." Defendant testified that after his conviction, he sent a letter to Ms. Perlin about the sleeping juror. The letter was admitted as Defense Exhibit 1.

In that letter, Defendant claimed that he requested Ms. Perlin file a motion for mistrial because of the sleeping juror. Defendant testified that Ms. Perlin filed a motion for new trial. However, Defendant claimed that motion did not address the sleeping juror. Defendant testified that he also sent a letter to

Judge Fernandez notifying her that there was a juror sleeping during trial. That letter was admitted as Defense Exhibit 2. Defendant testified that the purpose of the letter was to add on to the motion for new trial filed by Ms. Perlin, to add the issue of the sleeping juror. Defendant testified that had defense counsel brought up the issue of the sleeping juror, the outcome of his case would have been different "[b]ecause this one sleeping juror, since the Court had found me guilty of a unanimous verdict, because how could it be a unanimous verdict since one of the jurors wasn't in the case, you know?"

On cross-examination, Defendant claimed that the juror was nodding on and off at some point before some exhibits, such as pictures and evidence of the crime scene, were introduced as well as during testimony. Defendant testified that he could not tell how long the juror was nodding on and off, but that "[i]t's not going to be for minutes, but I can't put a number on that." Although Defendant claimed that Judge Fernandez admonished the juror for nodding off, Defendant admitted that nowhere in the trial transcript is this admonishment reflected. Defendant confirmed that "[i]t's just my testimony" that supports his recollection that Judge Fernandez admonished the juror.

At the September 18, 2017, evidentiary hearing, defense counsel Marcia Perlin testified. Ms. Perlin testified that she represented Defendant in the two criminal cases against him in 2013. Ms. Perlin confirmed that she represented Defendant at his jury trial. Ms. Perlin testified that she has no recollection of an issue regarding a sleeping juror. Ms. Perlin admitted that she did not have her trial notes available to her, and as a result, she could not say for certain that the issue of a sleeping juror was not brought to her attention.

However, Ms. Perlin testified that in that situation, which has happened before, her habit is to stop, ask the judge to approach, and advise the court of the problem. Ms. Perlin stated that she does not wait until a later time to bring up such an issue, but rather would address it as soon as it arises. Ms. Perlin confirmed that she has had situations in other trials where a juror was nodding off, and she always addressed the issue during the trial, and on some occasions, she has requested mistrials as a result. Ms. Perlin acknowledged that she received a letter after trial, dated May 14, 2013, from Defendant saying there was a sleeping juror. Ms. Perlin testified that she has no recollection of whether she had any conversations post-trial

with Defendant regarding his allegation that a juror was sleeping. At the September 18, 2017, evidentiary hearing, Defendant testified that Ms. Perlin never visited him to discuss the sleeping juror. Defendant claimed that both the Court and Ms. Perlin were aware of the sleeping juror because "inquiry had been made of that sleeping juror dung trial."

After reviewing Defendant's allegations, the testimony and evidence adduced at the August 10, 2017, and September 18, 2017, evidentiary hearing, the court file, and record, the Court first finds the testimony of Ms. Perlin to be more credible than that of Defendant. As such, the Court finds absolutely no support, other than Defendant's self-serving testimony, for the contention that a juror was sleeping during his trial. Although Ms. Perlin admitted that she did not have access to her handwritten trial notes, which would have provided her with more certainty about her personal recollection, she did not recall any issue regarding a sleeping juror. However, Ms. Perlin testified that had she been aware of a sleeping juror, she would have followed her typical protocol that she has followed in other cases, of stopping the trial and immediately bringing the issue to the Court's attention. The Court finds no deficient conduct on the part of Ms. Perlin for not raising the issue of a sleeping juror with the Court during trial or in a motion for new trial because she was not aware of any such problem. The Court reviewed the trial transcript, and finds that it does not reveal any mention of a sleeping juror. Indeed, Defendant admitted that the alleged admonishment by Judge Fernandez was not recorded in the trial transcript.

As such, the Court finds that Defendant has failed to establish deficient performance on the part of defense counsel. *See Strickland*, 466 U.S. at 686–87. The Court further finds that Defendant failed to establish how the outcome of the trial would have been different had the issue of a sleeping juror been brought to the Court's attention. *Strickland*, 466 U.S. at 694. The trial court has the discretion to remove a sleeping juror and substitute that juror with an alternate. *See Burgal v. State*, 740 So. 2d 82, 83 (Fla. 3d DCA 1999) (citing *Orosz v. State*, 389 So. 2d 1199, 1200 (Fla. 1st DCA 1980)). Two alternates sat through Defendant's trial and were ultimately discharged before deliberation. Defendant has failed to establish that had a sleeping juror been brought to the Court's attention, the Court would have exercised its discretion to remove that juror and replace him or her with an alternate. Defendant has further failed to establish that the alternate juror would have swayed

the deliberations such that a unanimous verdict of guilty would not be reached. Defendant has failed to show that defense counsel acted in a deficient manner, and has also failed to show that there is a reasonable probability that a not guilty verdict would have been reached had the alternate replaced the allegedly sleeping juror. Consequently, no relief is warranted on [the claim].

The post-conviction court found trial counsel more credible than Desir at the evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Nejad v. Att'y Gen., State of Ga.*, 830 F.3d 1280, 1292 (11th Cir. 2016).

Trial counsel testified that she represented Desir at trial and did not recall any discussion of a sleeping juror. (Doc. 11-6 at 98) Trial counsel explained that she would have raised the issue of the sleeping juror with the trial judge (Doc. 11-6 at 98–98):

|  |  |
|---|---|
| [Trial counsel:] | However, it is my habit that if, and this has happened, if somebody mentioned that there is a sleeping juror, I will stop. I will ask to approach and I will advise the court of my issues, especially since generally we will have an alternate juror that we can put in their stead if somebody was sleeping or if somebody had their eyes closed or even if they were nodding off[.] I would have addressed that. |
|  | I don't recall — again, this was a long time ago, I do not recall at the time anybody saying anything about any sleeping jurors . . . . |
| [Prosecutor:] | In your experience as an attorney, have you had jury trials where jurors have slept or had been found to be sleeping and you brought this to the court's attention? |
| [Trial counsel:] | I have on several occasions where I've noticed people nodding off or dozing off, and I have always addressed it during the trial; and in fact, on a couple of occasions we have had to declare mistrials because |

|  | of it. On a couple of occasions we were just able to substitute alternate jurors. |
|---|---|
| [Prosecutor:] | Is it an accurate statement that if the transcript were reviewed in this case and there was no mention by you of bringing to the court's attention a sleeping juror that that would indicate that you at no point were made aware of any sleeping juror during the trial? |
| [Trial counsel:] | Again, without my notes, I can't say for sure; but it is my habit that if I am advised by my client or by my co-counsel or if I, in fact, see it, I will address it at the very time that it happens. I don't delay and wait until a later time. I actually address it as soon as it is brought up. |

This Court reviewed the trial transcript and confirmed that the transcript does not reflect that the trial judge admonished a sleeping juror during trial. During his testimony, Desir agreed that the trial transcript does not reflect that the trial judge admonished a sleeping juror. (Doc. 11-6 at 57) He instead insisted that he independently remembered the admonishment. (Doc. 11-6 at 57) Because Desir both carries the burden to demonstrate that trial counsel deficiently performed and fails to present clear and convincing evidence that rebuts the state court's findings, the state court did not unreasonably apply *Strickland*'s performance prong. 28 U.S.C. § 2254(e)(1). *Insignares v. Sec'y, Fla. Dep't Corrs.*, 755 F.3d 1273, 1283 (11th Cir. 2014) ("While Insignares maintains the juror was sleeping, he has not provided clear and convincing evidence rebutting the trial judge's contrary factual finding. Therefore, we adopt the trial judge's finding that the juror was awake."). *Burt v. Titlow*, 571 US. 12, 22–23 (2013) ("We have said that counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment,' and that the burden to 'show that counsel's performance was deficient' rests squarely on the defendant.") (citing *Strickland*, 466 U.S. at 687, 690).

Whether the trial court could have substituted an alternate juror for a sleeping juror is an issue of state law, and a state court's determination of state law receives deference in federal court. *Machin*, 758 F.2d at 1433. Under state law, "whether to remove a sleeping juror and substitute him or her with an alternate is within the discretion of the trial court." *Ortiz v. State*, 835 So. 2d 1250, 1251 (Fla. 4th DCA 2003). *Orosz v. State*, 389 So. 2d 1199, 1200 (Fla. 1st DCA 1980) ("Even if the court were wrong, the error was harmless. The juror was replaced by a duly selected alternate who had been present during the entire proceedings and appellant has not shown that he was prejudiced by the substitution."). During *voir dire*, the prosecutor and trial counsel selected two alternate jurors. (Doc. 11-2 at 222–23) Desir testified that the juror "was, like, nodding off," before the admission and publication of photographs and other evidence at trial. (Doc. 11-6 at 56–57) Both alternate jurors sat through the entire trial, and the trial judge dismissed the alternate jurors before deliberations. (Doc. 11-3 at 230–32) Even if trial counsel had moved to strike a sleeping juror, the trial court could have exercised its discretion and substituted an alternate juror for the sleeping juror, instead of granting a mistrial. *Ortiz*, 835 So. 2d 1250, 1251.

At the hearing, Desir explained how the sleeping juror impacted his defense as follows (Doc. 11-6 at 41):

| [3.850 counsel:] | Okay. The sleeping juror who was sleeping during the presentation of evidence, what [was the] importance to your defense that this juror [was] sleeping during this portion of the trial? |
|---|---|
| [Desir:] | Well, that was important, you know — had the trial counselor [brought] that issue |

> to the trial court's attention, you know, because the trial would have been — you know, the trial wouldn't have been the same. Would have been, you know, take a different outcome, you know? Because this one sleeping juror, since the Court had found me guilty of a unanimous verdict since one of the juror's wasn't in the case, you know?

Because Desir did not demonstrate a reasonable probability that the outcome at trial would have changed, the state court did not unreasonably apply *Strickland*'s prejudice prong either. *Escobedo v. Lund*, 760 F.3d 863, 871–72 (8th Cir. 2014) (quoting *White v. Woodall*, 572 U.S. 415, 425–26 (2014)). *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) ("*Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

Ground Five is **DENIED**.

**Ground Six**

Desir asserts that trial counsel was ineffective for waiving his right to a speedy trial. (Doc. 1 at 11) Desir contends that trial counsel moved for a continuance and waived Desir's right to a speedy trial without consulting with Desir. (Doc. 1 at 11)[3] Desir alleges that trial counsel met with him at the jail; trial counsel told him that she could not attend his trial on

---

[3] The Respondent concedes that Desir exhausted the claim but contends that the claim is procedurally defaulted because, in his brief on post-conviction appeal, Desir asserted that the post-conviction court's ruling on the claim arose from procedurally defective proceedings. (Doc. 10 at 26) "Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but 'an alleged defect in a collateral proceeding does not state a basis for habeas relief.'" *Alston v. Dep't Corrs., Fla.*, 610 F.3d 1318, 1325 (11th Cir. 2010). In his federal petition, Desir asserts that trial counsel was ineffective for moving to continue trial and waiving his right to a speedy trial. (Doc. 1 at 11) That claim is cognizable on federal habeas, and the Respondent expressly waives the right to assert lack of exhaustion. 28 U.S.C. § 2254(b)(3).

March 4, 2013; Desir told trial counsel that he did not want another attorney to represent him; and, trial counsel agreed to return the following week before the expiration of his speedy trial right. (Doc. 1 at 11) Desir denies that trial counsel discussed either a motion to continue or the waiver of his speedy trial right. (Doc. 1 at 11) Desir claims he learned about the motion to continue and the waiver of his speedy trial right when an attorney moved for a continuance on behalf of trial counsel at a hearing on March 4, 2013, without consulting with Desir. (Doc. 1 at 12)

After an evidentiary hearing, the post-conviction court provided detailed reasons for denying the claim. (Doc. 11-6 at 9–21). First, the post-conviction court determined that Desir failed to demonstrate deficient performance under *Strickland*. (Doc. 11-6 at 20) The post-conviction court found that trial counsel, Marcia Perlin, met with Desir in jail, told him that she could not represent him at trial on March 4, 2013 because of illness, and advised that another attorney could represent him at trial. (Doc. 11-6 at 19) After Desir told Perlin that he did not want another attorney to represent him at trial, Perlin told Desir that she had to move for a continuance which would waive his speedy trial right. (Doc. 11-6 at 19) The post-conviction court further found that Jeffrey Marshall, an attorney who asked for a continuance on behalf of Perlin on March 4, 2013, explained to Desir that another attorney could represent him at trial and Desir insisted that Perlin represent him. (Doc. 11-6 at 19–20) Marshall explained to Desir that, if he wanted Perlin to represent him, Desir would have to waive his speedy trial right. (Doc. 11-6 at 20) The post-conviction court concluded that because "both attorneys adequately explained the situation, [Desir's] options, and the consequences of his choice to have Perlin represent him," Desir failed to establish deficient performance. (Doc. 11-6 at 20)

Second, the post-conviction court determined that Desir failed to demonstrate prejudice under *Strickland*. (Doc. 11-6 at 20) The post-conviction court found that Marshall advised Desir that the trial court would exclude Corries Facion as a witness if Desir proceeded to trial on March 4, 2013. (Doc. 11-6 at 21) Marshall offered to represent Desir at trial on March 4, 2013 to take advantage of the exclusion of the witness. (Doc. 11-6 at 21) Desir insisted that he wanted Perlin to represent him at trial. (Doc. 11-6 at 21) The post-conviction court concluded that Desir made an informed choice and cannot claim prejudice after that choice resulted in a guilty verdict. (Doc. 11-6 at 21)

The post-court did not unreasonably deny the claim. 28 U.S.C. § 2254(d). The post-conviction court found trial counsel more credible than Desir at the evidentiary hearing (Doc. 11-6 at 19), and a state court's credibility determination receives deference in federal court. *Nejad*, 830 F.3d at 1292. At the hearing, Perlin testified that, on February 26, 2013, she met with Desir at the jail and told him that she was ready for trial, but she was ill and possibly going to go to the hospital on the date of his trial. (Doc. 11-6 at 93–94) She told Desir that she would not participate in jury selection and may not participate in the trial if she had to remain in the hospital. (Doc. 11-6 at 95) Perlin suggested that another attorney could try the case, but Desir told Perlin that he did not want another attorney and would wait until Perlin recovered. (Doc. 11-6 at 95)

Perlin testified that she advised Desir that he would have to waive his right to a speedy trial (Doc. 11-6 at 95–96):

> [Prosecutor:]    Okay. Did you explain to him that if he wanted you to try the case and wanted to wait until you returned that he would have to waive speedy trial?

> [Perlin:] Yes. As a matter of fact, my notes say I advised that he would have to wait until after speedy trial ends. He had no problem with this. He wanted to wait for the name of the confidential informant, which was requested to be divulged by noon as of that day, [and we] also went over the State's best offer. Yeah, he said he was okay with that. He understood that, and he would rather wait for me.

Perlin denied ever discussing with Desir the possibility of trying to continue the trial within the speedy trial period, so that she could represent Desir at trial without waiving his speedy trial right. (Doc. 11-6 at 108)

Marshall testified that he was Perlin's supervisor and attended a hearing in Desir's case on March 4, 2013, when Perlin was absent. (Doc. 11-6 at 66–67) The day before, Perlin spoke with Marshall and provided him a motion to continue the trial. (Doc. 11-6 at 69) To comply with an administrative order, the motion stated: "Counsel has consulted with the Defendant who has no objection and understands that speedy trial is waived upon the granting of this motion." (Doc. 11-6 at 72) Marshall explained that he discusses the speedy trial waiver with all defendants who move for a continuance. (Doc. 11-6 at 81)

Marshall learned the substance of the discussion between Perlin and Desir before the hearing (Doc. 11-6 at 72–73), and spoke with Desir on March 4, 2013 about the continuance (Doc. 11-6 at 73–74):

> [Prosecutor:] So on March the 4th of 2013, tell us about your discussions with Mr. Desir regarding this continuance and the speedy trial and those issues?
>
> [Marshall:] Well, you know, I certainly would have been happy to jump in and make all of the strategy decisions at that time. I had done it before and on other cases where

26

attorneys were absent. Ms. Perlin additionally advised me in the communication that there needed to be a continuance, that there was an additional witness, not Ms. Walker, that would put a gun in Mr. Desir's hand. As far as [I] knew, I didn't know the name of the witness, but it was coming and ultimately I knew, in my professional judgment, that a continuance would allow that to happen.

Having appeared in front of Judge Fernandez and I think knowing Ms. Silver, she would have known if we were ready to go that day, that witness probably was not going to be allowed to be called. Discovery would not have been amended in such a way based on the posture of the case.

So I knew all that, and I was telling him, hey if we want to take advantage of this — now, I'll let the transcript speak for itself. I probably didn't have that conversation by the time the case got called up immediately which is what's going on. We had a discussion and then it got passed.

That when I'm speaking with Desir, we want to take advantage of this. We want to have this witness excluded. We don't want to take this risk of this witness putting the gun in your hands. We've got to be ready to go regardless of Ms. Perlin's availability.

It was really an easy conclusion for me to jump to and tell him, quite frankly. And consistent with the conversation from February and consistent with the desire to continue it, he simply represented to me that he wanted Ms. Perlin to handle his case, and the case needed to be continued for her to be present for it.

Marshall testified that Desir understood that he waived his speedy trial right by asking for a continuance. (Doc. 11-6 at 75, 84) Marshall told Desir that, even if he waived his speedy trial right, he could assert his speedy trial right later when Perlin was prepared to proceed to trial. (Doc. 11-6 at 75–76, 82) Marshall denied misleading Desir about the waiver of his speedy trial right (Doc. 11-6 at 76–77):

> [Prosecutor:]  In any way did you mislead Desir into agreeing to continue the case or waive speedy trial?
>
> [Marshall:]  No. And in fact, if there was any consternation about it, I would probably have still made the same decision and told him — well, again, I had to know more about the witness, but Ms. Perlin — he wants Ms. Perlin to represent him, that's what he wants, but he doesn't want a continuance, I would have said, well, you're going to go to trial with me or with Ms. Perlin. Sounds like you want Ms. Perlin. I'm going to continue this case so you can have Ms. Perlin.
>
> Even if he didn't want that, that probably would have been what I ultimately did because, you know, we talked about pretrial. It's not my argument to be made, but largely it's a strategic decision to accomplish the things that are in his best interest. I wasn't deeply involved in that decision, but I saw the writing on the wall and I had the conversation. I invited him to it, and he absolutely agreed with it from my point of view, and we ultimately continued the case.
>
> [Prosecutor:]  And when you say, "the writing on the wall," you mean that he was adamant all along that he wanted Ms. Perlin to try his case?

[Marshall:]          That's correct.

Marshall explained to Desir: "To have Ms. Perlin, he was going to need a continuance and a continuance required a waiver of speedy trial . . . ." (Doc. 11-6 at 84)

Perlin's and Marshall's testimony supports the state court's findings, and Desir fails to come forward with clear and convincing evidence to rebut those findings. 28 U.S.C. § 2254(e)(2). Desir wanted Perlin to represent him at trial, and Desir understood that he would have to waive his speedy trial right if he wanted Perlin's representation. Because trial counsel's decision to waive Desir's speedy trial right was not objectively unreasonable, the state court did not unreasonably apply *Strickland*'s performance prong. *Fayson v. Sec'y, Fla. Dep't Corrs.*, 568 F. App'x 771, 774 (11th Cir. 2014); *Dillard v. Sec'y, Dep't Corrs.*, 440 F. App'x 817, 820 (11th Cir. 2011).

At the hearing, Desir testified that trial counsel's decision to move for a continuance and waive his speedy trial right prejudiced him because the prosecution could not proceed to trial on March 4, 2013 (Doc. 11-6 at 48–49):

|  |  |
|---|---|
| [3.850 counsel:] | Now, were you prejudiced by the waiver of speedy trial and the continuance of your trial date? |
| [Desir:] | Yes, sir, I was prejudice. |
| [3.850 counsel:] | How were you prejudiced? |
| [Desir:] | Because I was waiting for trial and the State was having witness[ ] issues with the attempted murder case. The State didn't have no witness really. The witness that they had was not cooperating with the State. |
| [3.580 counsel:] | And what was the name of that witness? |
| [Desir:] | That was April Walker. |

| | |
|---|---|
| [3.850 counsel:] | Okay. And was April Walker also present on that March 4th hearing date when your case was reset? |
| [Desir:] | Yes, sir. |
| [3.850 counsel:] | Did she put on the record at that court date that she didn't want to be involved in the case? |
| [Desir:] | No, basically — first of all, she didn't want to be involved. |
| [3.850 counsel:] | Okay. And was she the primary witness, at that point, identifying you as the shooter in this murder case. |
| [Desir:] | At that point. |
| [3.850 counsel:] | At that point, was Ms. Walker the primary witness for the State? |
| [Desir:] | That was the only witness that the State had since the case began. |
| [3.850 counsel:] | So without Ms. Walker, it was going to be difficult for the State to be able to prove their case beyond any reasonable doubt? |
| [Desir:] | Beyond that, the State would not be ready for trial without April Walker. |

At the March 4, 2013, hearing on the motion to continue, April Walker was present in court but was uncooperative and reluctant to testify. (Doc. 11-6 at 124–26) April Walker asked the prosecutor to stop harassing her and serving subpoenas on her to testify at trial. (Doc. 11-6 at 126) But April Walker was not the prosecution's only witness to the shooting.

Johnny Walker, the individual who Desir shot, testified at trial and identified Desir as the shooter. Johnny Walker testified that, when he suffered the gunshot wound, the shooter "was close enough like I could touch his face with my arm." (Doc. 11-3 at 36) The

shooting occurred on a bright, sunny day. (Doc. 11-3 at 38–39) Johnny Walker immediately recognized Desir as the shooter. (Doc. 11-3 at 36) When Johnny Walker exited his car after the shooting, he was able to clearly view Desir's face a second time. (Doc. 11-3 at 38) Johnny Walker knew what Desir looked like because he had seen his picture on April Walker's mobile telephone and had met him twice before the shooting. (Doc. 11-3 at 52–57) Johnny Walker identified Desir as the shooter in a photographic lineup prepared by police a few days after the shooting (Doc. 11-3 at 48–51) and identified him in court. (Doc. 11-3 at 36) Consequently, Desir cannot not contend that, if trial counsel had not moved for a continuance and waived his speedy trial right, the prosecutor could not have proceeded to trial and proven his guilt beyond a reasonable doubt.

Desir testified that the continuance and waiver of his speedy trial right further prejudiced him because the prosecutor was able to secure and substitute Facion as a witness for April Walker. (Doc. 11-6 at 52–55) He testified that, without Facion's testimony, the prosecutor would not have been able to prove his guilt beyond a reasonable doubt. (Doc. 11-6 at 55) At the hearing, Marshall testified that he advised Desir that the trial court would exclude Facion as a witness if Desir proceeded to trial on March 4, 2013, without Perlin. (Doc. 11-6 at 73–74) Marshall testified that Desir responded, "that he wanted Ms. Perlin to handle his case, and the case needed to be continued for her to be present for it." (Doc. 11-6 at 74)

Also, Facion was not a critical witness. Before trial, Perlin successfully moved to exclude testimony by Facion that he observed Desir possess a firearm several weeks before the shooting. (Doc. 11-3 at 7–9) Facion did not observe the shooting and instead testified that, days before the shooting, he heard Desir angrily say that he wanted to "get" Johnny

Walker. (Doc. 11-3 at 91) Johnny Walker testified that, before the shooting, he and Desir physically fought and exchanged angry words about Desir's relationship with April Walker. (Doc. 11-3 at 55–57) Even without Facion's testimony, the jury could have reasonably inferred from Johnny Walker's testimony that Johnny Walker angered Desir before the shooting. Also, unlike Facion, Johnny Walker did observe the shooting and reliably identified Desir as the shooter both in a photographic lineup prepared by police and in court. (Doc. 11-3 at 36–39, 48–57) Even without Facion's testimony, the prosecutor could have proven Desir's guilt beyond a reasonable doubt.

Because Marshall advised Desir that the trial judge would have excluded Facion as a witness if he had proceeded to trial without Perlin and Desir still insisted on Perlin's representation, Marshall did not deficiently perform. Because the prosecutor could have proven Desir's guilt even without testimony by April Walker and Facion, Desir could not demonstrate prejudice and the state court did not unreasonably apply *Strickland*. *United States v. Asubonteng*, 895 F.2d 424, 429 (7th Cir. 1990). *Accord McKenzie v. State*, 153 So. 3d 867, 875 (Fla. 2014) ("[A]n attorney may waive speedy trial without consulting the client and even against the client's wishes. Thus, if the right to speedy trial may be waived without consulting the defendant, counsels' waiver here cannot be considered an error, let alone one that is 'so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'") (citations omitted) (quoting *Strickland*, 466 U.S. at 687).

Ground Six is **DENIED**.

Accordingly, it is **ORDERED** that Desir's petition (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Desir and **CLOSE** this case.

### DENIAL OF CERTIFICATE OF APPEALABILITY AND
### LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Desir neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on March 17, 2022.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE